IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Docket No. 18 CR 873 |
| | ) | |
| Plaintiff, | ) | Chicago, Illinois |
| | ) | September 6, 2019 |
| v. | ) | 12:26 p.m. |
| | ) | |
| MATTHEW GREGORY BERGER, | ) | |
| | ) | |
| Defendant. | ) | |

TRIAL EXCERPT
TRANSCRIPT OF PROCEEDINGS - Jaime Rivera Testimony
BEFORE THE HONORABLE THOMAS M. DURKIN, and a Jury

APPEARANCES:

| | |
|---|---|
| For the Government: | MS. KAITLIN G. KLAMANN<br>MS. HEATHER K. McSHAIN<br>Assistant United States Attorneys<br>Honorable John R. Lausch Jr.<br>United States Attorney<br>219 S. Dearborn Street, 5th Floor<br>Chicago, IL 60604 |
| For the Defendant: | MR. STEVEN A. GREENBERG<br>Steven A. Greenberg & Associates Ltd.<br>53 W. Jackson Boulevard, Suite 1260<br>Chicago, IL 60604 |
| | MR. JOSHUA G. HERMAN<br>Law Office of Joshua G. Herman<br>53 W. Jackson Boulevard, Suite 457<br>Chicago, IL 60604 |
| Also Present: | MR. MATTHEW GREGORY BERGER |
| Court Reporter: | LAURA R. RENKE, CSR, RDR, CRR<br>Official Court Reporter<br>219 S. Dearborn Street, Room 1432<br>Chicago, IL 60604<br>312.435.6053<br>laura_renke@ilnd.uscourts.gov |

(In open court in the hearing of the jury; defendant present.)

(Proceedings had not herein transcribed.)

THE COURT: All right. Defense may call its first witness. Someone needs to get him.

And, ladies and gentlemen, I think this witness is going to be relatively brief. Then we'll take our lunch break. So give you the schedule.

(Witness enters the courtroom.)

THE COURT: Right up here, sir.

THE CLERK: Raise your right hand, please.

(Witness duly sworn and takes the stand.)

THE WITNESS: Yes.

THE CLERK: You may be seated.

THE COURT: All right. Proceed.

JAIME RIVERA, DEFENDANT'S WITNESS, SWORN

DIRECT EXAMINATION

BY MR. GREENBERG:

Q. Please introduce yourself to the ladies and gentlemen of the jury.

A. My name is Jaime Rivera, R-I-V-E-R-A.

Q. Do you want to pull that microphone closer or pull the seat in a little bit?

COURT REPORTER: What is your first name?

THE WITNESS: Jaime.

COURT REPORTER: Spell it.
THE WITNESS: J-A-I-M-E.
COURT REPORTER: Thank you.
BY MR. GREENBERG:
Q. All right. And, sir, where are you employed?
A. City of Rolling Meadows.
Q. What do you do at Rolling Meadows?
A. I'm a police officer.
Q. How long have you been a Rolling Meadows police officer?
A. 17 years.
Q. So what's your -- your current assignment in Rolling Meadows?
A. Patrol.
Q. Okay. You've got to just let me finish the question before --
A. Looked like you did.
Q. All right. I just want to get it clear.
So you're here today pursuant to the subpoena we served on you, right?
A. Yes.
Q. All right. And did you have occasion on the 17th of December of 2018 to conduct part of an investigation at 1600 Golf Road?
A. Yes.
Q. And that's in Rolling Meadows, right?

A. Yes.
Q. That's an office building there?
A. Yes.
Q. Okay. You were dispatched there when there was a 911 call. Is that right?
A. Yes.
Q. Did you get there in the morning?
A. Yes.
Q. Do you remember approximately what time that was at?
A. Approximately 8:20.
Q. Oh, all right. And when you went there, did you speak to a young lady whose name was -- last name was Kerrigan?
A. Yes.
Q. And did you speak to her about what had occurred that day?
A. Yes.
Q. Did you ask her to tell you what had happened?
A. Yes.
Q. Okay. And did she talk to you?
A. She did.
Q. Did you -- do you remember how long you spoke with her?
A. It's probably 10, 15 minutes.
Q. Was it enough time to ask the questions you thought needed to be asked?
A. Yes.
Q. Did she tell you she had anything to add to the -- what you

asked?
A. No.
Q. Okay. Did she seem forgetful or anxious or anything like that?
A. No.
Q. Was she calm?
A. Yeah.
Q. Do you remember where you talked to her?
A. It was on the 5th floor in front of her employment where she worked.
Q. So up where she worked.
A. Yes.
Q. Okay. And was it in the hallway by the elevators or --
A. Yes.
Q. And did you take notes while you were talking to her?
A. I did.
Q. Did you later take those notes and create a police report?
A. I did.
Q. And did you file that police report?
A. Yes.
Q. Did you review it and sign it --
A. Yes.
Q. -- make sure it was accurate?
Yes?
A. Yes.

Q. Okay. Was there a -- do you have supervisors who sign off on your reports in Rolling Meadows?
A. Yes.
Q. And what's the purpose of that?
A. Just to show that we turned a report in.
Q. Okay. And were you working with other officers that day?
A. Yes.
Q. But were you the one that spoke to Ms. Kerrigan?
A. I spoke to her.
Q. And was any other officer there when you were speaking to her?
A. No.
Q. Was anyone from Ms. Kerrigan's employment there when you were speaking to her?
A. I believe there was another gentleman from her -- that was there for -- with her.
Q. Oh, all right. And was he a witness, or was he just there?
A. No, he was just there.
Q. Okay. So did Ms. Kerrigan tell you that she had seen an individual as she was walking in from the parking lot?
A. Yes.
Q. And did she describe that individual for you?
A. She did.
Q. Did she describe that that individual had spoken to her?
A. Yes.

Q. Did she tell you that that individual had said that the flags in front of the building should be changed to Russian flags?
A. She did.
Q. Did she tell you that that individual said that someday he was going to "f" the FBI?
A. Yes.
MS. KLAMANN: Objection, your Honor. Hearsay.
THE COURT: It's impeachment. Overruled.
BY MR. GREENBERG:
Q. Did she tell you that the individual said "f" America?
A. Yes.
Q. Did she tell you that the individual said he was going to kill her?
A. She did not.
Q. Did she tell you that the individual said he was going to kill the FBI?
A. She did not.
Q. Did she tell you that the individual said he was going to kill the people in the building?
A. She did not.
Q. Did she tell you that the individual had made gun gestures with his hands?
A. No, she did not.
Q. Did she tell you anything about the individual speaking

with a Russian accent?
A. No.
MR. GREENBERG: Thank you.
THE COURT: All right.
MR. GREENBERG: If I may have one moment, Judge.
THE COURT: All right.
MR. GREENBERG: I have nothing else.
THE COURT: Cross-examination.

CROSS-EXAMINATION

BY MS. KLAMANN:
Q. Good afternoon, Officer.
A. Hello.
Q. You just testified that you spoke with a woman by the name of Andrea Kerrigan on December 17th, 2018. Is that right?
A. It was February, I believe.
Q. You spoke with Ms. Kerrigan in February?
A. Oh, actually, it was -- no. It was December, yes.
Q. Do you remember which day in December?
A. I don't remember what day.
Q. And when you spoke to Ms. Kerrigan on that day, she described the man -- the man that she encountered in the parking lot that morning, didn't she?
A. She did.
Q. She told you that he was wearing a black jacket, right?
A. Yes.

Q. And black shorts?
A. Yes.
Q. And a white baseball hat?
A. Yes.
Q. She also told you initially that she heard something that made her think that the man was on the phone, right?
A. Yes.
Q. And she told you he said he was going to change the flags outside the building to Russian flags, right?
A. That they should change the flags that were outside to Russian.
Q. She also told you that she saw him walk toward the cafeteria when she got in the building, right?
A. Yes.
Q. She also told you she reported what the man said to her that morning to the security guard, right?
A. Yes.
Q. Now, Officer Rivera, it's your practice to take notes when you interview someone, isn't it?
A. It is.
Q. Are those handwritten notes?
A. Yes.
Q. Just pen and pencil?
A. Yes.
Q. You don't type those notes?

A. I do not.
Q. Those notes aren't a verbatim transcript of what the witness says on that day, right?
A. No.
Q. Because people talk fast, right?
A. Yes.
Q. Things move quickly.
A. Yes.
Q. You can't record everything that happens during an interview. Isn't that right?
A. Correct.
Q. Officer Rivera, it's possible, isn't it, that there may have been things missing from the report that you wrote of your discussion with Ms. Kerrigan. Is that right?
A. I don't recall anything.
Q. Officer Rivera, did you speak with the government last night?
A. I did.
Q. And the government asked you what you recalled about your discussion with Ms. Kerrigan. Is that right?
A. Yes.
Q. And you told the government you recalled Ms. --
MR. GREENBERG: Can we get a foundation, Judge?
THE COURT: Well, if you can be more specific about when and who actually talked to him.

BY MS. KLAMANN:
Q. Officer Rivera, did you speak with myself, AUSA Kaitlin Klamann; AUSA Heather McShain; and Special Agent David Young last night?
A. Yes.
Q. And you told the government that you recalled Ms. Kerrigan telling you during the interview when she heard someone speaking behind her that she turned around and said, "Excuse me?" right?
A. Yes.
Q. That's not in your report, is it?
A. It's not.
Q. And then today, Mr. Greenberg asked you if anyone else was present during this interview. Do you remember that?
A. Yes.
Q. And you said there was, right?
A. There was, yes.
Q. You don't mention that there's another person present in your interview in your report of that interview, do you?
A. I do not.
Q. So not everything that happened during that interview is recorded in your report, right?
A. Correct.
Q. Officer Rivera, when you meet with a witness, you ask them for their name, right?

A. I do.
Q. Do you ask them to spell their name?
A. Yes.
Q. It's important to get the spelling of the witness's names correct, right?
A. Yes.
Q. And you write their name down when you're taking notes. Is that right?
A. Yes.
Q. And you asked Ms. Kerrigan for her name when you interviewed her?
A. I did.
Q. And you wrote her name down?
A. Yes.
Q. And, Officer Rivera, are you aware you misspelled Ms. Kerrigan's name throughout the police report in this case?
A. I am not.
Q. Ms. Kerrigan didn't misspell her own name when you spoke with her, right?
A. I don't believe so.
MS. KLAMANN: Just one second, your Honor.
THE COURT: All right.
(Counsel conferring.)
MS. KLAMANN: No further questions, your Honor.
THE COURT: Anything else?

MR. GREENBERG: Yes.

REDIRECT EXAMINATION

BY MR. GREENBERG:

Q. Officer Rivera, while your report may not be as accurate as if you had videoed the interview, if Ms. Kerrigan had told you that -- that the person had threatened to kill her, would you have put that in your report?

A. Yes.

Q. If he had -- if she had told you that the person threatened to kill the FBI and the people in the building, would you have put that in your report?

A. Yes.

MR. GREENBERG: Thank you.

THE COURT: Anything else from the government?

MS. KLAMANN: Nothing further, your Honor.

THE COURT: All right. Officer, you're excused. Thank you.

THE WITNESS: Thank you.

(Proceedings had not herein transcribed.)

(Excerpt proceedings concluded at 12:37 p.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript of the excerpt of proceedings in the above-entitled matter.

*<u>/s/ LAURA R. RENKE</u>* *<u>September 8, 2019</u>*
LAURA R. RENKE, CSR, RDR, CRR
Official Court Reporter